Good morning, Your Honors. May it please the Court, my name is Harini Raghupathy from the Federal Defenders of San Diego. On behalf of the appellant, Mr. Ramon Armando Saucedo-Trejo. The primary question for this Court is whether Mr. Saucedo has waived his right to appeal under the plea agreement. And he has not, because the government has breached the plea agreement in two different ways. Accordingly, this Court should deny the government's motion to dismiss and find that Mr. Saucedo has retained his right to appeal. So I'll focus on each breach in turn. First, the government breached the plea agreement by violating its literal terms. Section XF of the plea agreement provides that, quote, The parties will recommend that defendant be sentenced to the low end of the advisory guideline range as calculated by the parties at the time of sentencing pursuant to this agreement. End quote. Does that mean a joint calculation, or does it mean a several calculation? I believe the plain language of that agreement shows that it means a joint calculation, and I'm relying on several aspects of that clause of that sentence. One is that it uses the singular nouns, the low end, and the advisory guideline range. It also uses the phrase by the parties. So it doesn't say by the government or by the defendant. So our position is that the literal terms, the clear language of those literal terms, envisions The problem is, is that you have to read that in light of XA. And in XA, the parties did not agree. And they specifically said, you dropped a footnote, said they're free to argue for the applicability of different things. It didn't mean that they were going to argue and then come to a consensus. Well, Your Honor, I respectfully disagree. I believe footnote 1 says the parties are free to argue for the applicability of any specific offense characteristic. And it says the parties. It doesn't say the government. So it differs from other portions of the plea agreement in which the government is empowered to take a certain way. I'm sorry. I don't understand that. When it refers to parties, it doesn't include the government? No, no. It uses the phrase, footnote 1 uses the phrase the parties. Right. And in other provisions in the plea agreement where the government is allowed to take a unilateral course of conduct, for example, by opposing a continuance by Mr. Saucedo, it uses the term the government. And so this provision doesn't mean that the parties aren't going to reach a joint enhancement at sentencing. It simply means the parties are agreeing that they're not limiting themselves to some subset of the five enhancements under 2L1.2B. So I compare this with other places where it talks about the parties jointly recommending something as opposed to the parties are free to argue, which just sounds like they can argue whatever their view is of what the specific offense characteristic should be to the court. So because they left that term blank and are just arguing to the court, I read F in context as suggesting that once the court has determined what those guidelines are, they're supposed to recommend the low end. That seemed to make it more consistent. Well, so do you mind? Sorry, I'm not following exactly. So you're suggesting that, let me open the page here. So they did, the parties did recommend the low end of the guidelines as finally determined by the court. Once the court had determined the range, they recommended the low end, and I think that's what your client got, right? Well, he did get the low end of the range calculated by the government, but Section XF. It's not the court, right? But Section, correct, but Section XF specifically says as calculated by the parties. It doesn't say as calculated by the court. Curiously, that same thing says the parties will recommend. It doesn't say the parties will jointly recommend, but that phrase is used in XG. It's also used in XA. That is the parties will jointly recommend. So XF does seem to be, I mean, if we're going to read this closely, as closely as you want us to parse this language, we omitted the word jointly in X or in F. That is correct. However, by the same argument on page 233 of the ER, it says in Section D, it says the parties have no agreement as to defendant's criminal history category. And so that's an example of language in which the parties are making explicit that they're not reaching an agreement. And notably, footnote one doesn't use that same language. And so the government's interpretation of footnote one, that it doesn't envision a joint recommendation, isn't consistent with the language in D. Wouldn't the calculation of the criminal history also have been relevant to the calculation of the sentence? It is, Your Honor, and both parties were in agreement on the criminal history calculation that he was in Category 5, I believe. Well, they did agree, but the parties, but the agreement says the parties have no agreement. The fact that they later agreed is, I mean, is sort of a happy coincidence, right? Correct. Correct. But the, so that still leaves us then with the possibility that F contemplated that the guideline range as calculated by the parties included that there was no agreement as to criminal history and that the parties might well disagree over the criminal history. Well, Your Honor, even conceding that that is a reasonable interpretation, then this, then I would submit that the plea agreement is ambiguous, meaning it's subject to interpretation under either my interpretation or Your Honor's interpretation. And this Court has repeatedly said when there's an ambiguity in the literal terms of the plea agreement, then it steadfastly applies the rule that the lack of clarity is construed against the government because it's the drafter of the agreement. But we first look at extrinsic evidence, though. I mean, we take a stepwise approach. We first look at the plain language of the contract. Correct. And we consider extrinsic evidence, and only then would we go to the contra preferendum. And here the government says, at least as with respect to the specific offense characteristic, that defendant said, I want to interlineate what that level is going to be, and the government said, no, we don't agree with that. Right. So why wouldn't we consider that evidence as well? Well, if this Court considers that evidence, I believe it corroborates Mr. Saucedo's interpretation, because that simply suggests that at the time the parties entered into the agreement, they didn't agree on the specific offense characteristic, which makes considerable sense given that the documents were not yet produced from the State court. But it doesn't suggest that they didn't envision coming to an agreement after the documents were received and after the parties could negotiate in good faith and arrive at a joint recommendation. And your linguistic evidence of that is in the F, XF. Is that your position? That is our position, yes, Your Honor. That's as clear as it gets. Yes, Your Honor. What do we make of this acceptance of responsibility where it says 3 or 2? So they also didn't agree on acceptance of responsibility, right? I mean, it seems like they didn't agree on the terms. There were some terms that were left to be decided at the time of sentencing, but I still think, if Your Honor is suggesting there wasn't an agreement, I do believe there was a definitive enough agreement for this plea agreement to be enforceable, because the parties had a duty to negotiate in good faith, which I think put a limitation on their bargaining power. So if there were items to be determined by the court at the time of sentencing, then you wouldn't know what the range was until sentencing. Am I misunderstanding that? I believe there are two different issues. One issue is what the district court will ultimately impose, and of course, that is the authority of the district court to calculate the guidelines range and impose a sentence. But the plea agreement constrains under this type of plea agreement, it doesn't impose any restriction on the district court. It simply imposes a restraint on the party's ability to make a recommendation to the district court. And so that's the issue here. It's not what the district court ultimately calculated the guidelines to be. It's what the government recommended to the district court should be the calculation of the guidelines. I see that I have two minutes remaining, if I may reserve the remainder of my time. Of course. Thank you, Ms. Rogopathy. Thank you. Is that it? Good morning, Your Honors. Michelle Pettit for the United States. So going right to the heart of the matter, the literal terms of this particular contract, it is key that in paragraph XF, there is no word joint. When you look at the plea agreement in the entire context, the four corners of this document, it is clear there was no agreement at all between the United States or the defense on what the sentencing enhancement would be in this case. Beyond just looking at the four corners of the document, well, first let me state, on the four corners of the document, footnote one is very key. And the reason why footnote one is so key is because it explicitly states that the parties are free to argue whatever they think the applicable guideline range is for the prior conviction. It was up to both parties to make a determination on the facts that were ultimately presented at sentencing to make their arguments to the court on what that enhancement would be. And there is nothing in this plea agreement that changes that footnote or in any way undermines that footnote. So looking at the four corners of this document, at no point does it say there was a joint recommendation for that particular enhancement. And then looking at the extrinsic evidence beyond that, from the moment the parties started to negotiate this case, there was a disagreement, whether it was a plus 4 or plus 16. The defense had tried to get the United States to agree to a plus 4 enhancement and the United States refused to do so. So by the time this case comes to sentencing, it came down to whether or not the United States was able to get the judicially noticeable documents. And that was really the only issue to be addressed between the parties. When the United States filed its sentence summary chart in April of 2012, there was no objection by the defense, no comment by the defense that the government had in any way breached the contract by not recommending a plus 4. The first contact between myself, I was the actual AUSA assigned to the case and argued at the sentencing, the first contact I had with the appellant's attorney was in May with the e-mails where the appellant attorney was making an argument for a plus 4 instead of a plus 16. At no point during that discussion was there ever a comment that the United At the May 20, excuse me, the May 29, 2012, sentencing hearing, when I came before the court and explained to the court I needed judicially noticeable documents. And until I had them, I was going to have to modify my sentence summary chart to a plus 4 if we went forward. So I asked for continuance because I had requested the documents and had expected to get them. At that point, the appellant counsel at no point, no discussion in that transcript said that there was a breach. The only argument was whether or not we go forward that day and whether or not defense would object to the continuance. It wasn't until the August 6th hearing, which as you see from the transcript, there was many hearings and many discussions on these points. But it wasn't, the word breach was not even mentioned until August 6th. And it was not fully explained by the defense. It was only a comment that they would like to explore that in further briefing. The court ultimately allowed them to do the, to file the further briefing. But that briefing wasn't filed until September 27th of 2012. That was the first time since the defendant was arrested in October of 2011 that the defense at any point said there was a breach and made any kind of argument that the United States was required to argue for a, or to recommend a plus 4 instead of a plus 16. If the appellant truly believed that there was an agreement that the United States was required to argue for a plus 4, that would have been explicitly stated and talked between the attorneys back in April, at least back in May 29th at the first sentencing hearing where this was discussed on the record. So it appears from the record, when you're looking extrinsically outside the contract, that this is just an argument, the only argument that at this point the appellant has to try to get out of the plea agreement. It's significant that on May 29th, when this was raised as an issue and there was an initial request or objection, excuse me, by the defense, the judge said on the record, even if it's a plus 16 or a plus 4, it doesn't matter. He was looking at a 52-month sentence as he, what he believed was the appropriate sentence. If we had gone forward on that day at sentencing, I would have had to amend my sentence summary chart orally because I didn't have the judicially noticeable documents. And if the judge had sentenced him to 52 months, which was his tentative ruling, then the defendant would have had an opportunity to appeal because my calculation would have been a plus 4. He would have been above the high end of the guideline range, according to the appellate waiver, and he would have had a right to appeal the reasonableness of the sentence. But instead, knowing that, he conferred with his counsel and he decided it was in his best interest to wait, to go ahead and agree to the continuance and see what this plea colloquy of the underlying conviction said, to see if the government could actually approve the plus 16. Now, in the end, it did work for his benefit because instead of getting a 52-month sentence, he got a 46-month sentence. But it's clear on the record that he made an informed decision, and it wasn't until those records came back and did not go in his favor that he then comes up with this argument about a breach. And he comes up with this argument and also claims specific performance because that's the only way that he can get a different judge to hear this case because he knows if he goes back to the same judge, he will likely get the same sentence. So he's basically wanting his cake and eating it too. He's entering a plea agreement in order to have a benefit of a reduced sentence with a minus 4 for fast track, which also gives him a very good benefit to get this case done expeditiously. But when he doesn't like the ultimate result, when we actually are able to get the documents to support a plus 16, he's trying to find a way out of this plea agreement. As this court has said in the past and in contract law, for public policy reasons, it is important to uphold these contracts. It is important for judicial economy and for the spirit of negotiations for both parties to get the benefit that they bargained for. If a defendant is allowed to come before the court and make whimsical arguments about a breach just because it no longer does the sentence look as good as it did when he entered the plea agreement, then there would be no incentive for the United States to ever enter into these plea agreements. That would reduce the benefits to defendants in future cases. It would also slow down the judicial process by putting many more trials through the system. Lastly, I would just like to make a comment, a brief comment about the argument by defense of unfair dealing and bad faith on the part of the United States. That's obviously a very serious accusation to make against the United States, and I would just like to say it's very clear on the record that the United States was always very candid with the defense about what they believed the calculations to be. They were very candid with the court about what they believed they needed to prove the plus 16, and when I did not have the documents I needed from Los Angeles on May 29th, I was very clear with the court what my position was and what I was requesting. And if I had to proceed forward that day, I obviously would have to amend my sentence summary chart. At no point did the government do something that was not in accordance with the plea agreement or that was unfair or not candid with the court. We did act in good faith and in accordance with the plea terms. For those reasons, we think this is a clear case of a very strong appellate waiver. The language in the appellate waiver is clear that if the defendant is sentenced within the guideline ranges recommended by the United States, he had no right to appeal. In this case, he had no right to appeal. And for those reasons, we request this court dismiss this appeal. Thank you. Thank you, Ms. Knapp. Secretary Papi, you have time remaining. Two brief points, Your Honors. First, the government talked about the issue of bad faith, and I agree that, Your Honor, the government was candid with the court that they didn't have the district court documents, but the bad faith doesn't lie in lack of candidness. It lies in the fact that the district, excuse me, the government didn't take an unequivocal position from the outset of the first sentencing hearing that Mr. Saucedo's prior conviction was not a plus 16. Instead, the government, giving them a liberal interpretation, they equivocated. So, for example, on page 203 of the ER, the government said, we're looking at right now at a plus 16, 46 to 57 months. If it's a plus 4, it's a 12 to 18-month guideline range. So, essentially, given the lack of documents, the government was still contending that right now it's a plus 16. There were no judicially noticeable documents at that point in the record. The government had the burden to meet under the modified categorical approach to provide clear and convincing evidence, and it didn't provide any, yet it was still contending that right now it's a plus 16. So therein, I believe, lies the bad faith. And the restatement has made clear that bad faith isn't limited to dishonesty. It encompasses broader conduct. That includes evading the spirit of the bargain, engaging in non-diligent behavior, and abusing its power to specify terms. And that's a clear and ---- Kennedy, knowing about judicially noticeable documents but not having them in her possession, government counsel was in bad faith by referring to them? The position is that the government counsel was in bad faith in suggesting to the court that it was in recommending a plus 16, while acknowledging that it had no documents whatsoever to prove its duty under the modified category. But the government counsel knew what the conviction was about. They just hadn't gotten the documents in hand yet, correct? They did know that he was convicted under Section 243C2. Of assault on a police officer. Correct. So they knew that conviction, but they just didn't have the documents showing how he had pleaded and what the court colloquy was, et cetera. Now, are you saying that government counsel should not have raised the issue at all because they didn't have at that point possession of the documents? I don't think you're saying that, are you? I'm saying that given the lack of documents at that hearing, the government should have taken an unequivocal position that under the record as it then existed, Mr. Saucedo's conviction was a plus 4. And they didn't do that. Knowing that the conviction was a 245A3 against assault against a police officer, which was a felony in California, they should take a position that that should be washed out? Yes, Your Honor, because under this Court's case law, it's been established that the government has the duty to provide clear and convincing evidence. And they knew from the very early stage of plea negotiations in this case that the documents would be critical to meeting their burden of proof. Did they provide it before sentencing? They didn't, Your Honor, because the plea agreement provides that the government has the burden at the time of sentencing. And the time of sentencing was, as contemplated by the plea agreement, was the first sentencing hearing scheduled for May 29th, 2012. Was the sentence entered May 29th? No, Your Honor. Did they have the document tendered to the Court before the actual sentencing took place? Sentencing was continued, and they provided it subsequently. Can you answer that question? They did not have the documents. Provided before sentencing was entered, right? Before sentencing was entered, but when sentencing was entered was not the. That's all I wanted to find out. Okay. Thank you, Your Honors. If there are no further questions, we'd ask this Court to deny the government's motion to dismiss. Thank you. Thank you. Thank you both for the argument. Cesero-Trejo is submitted on the briefs. That completes the oral argument calendar for today. Court is adjourned for the day.
judges: Bybee, Bea, Ikuta